IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE HORACIO MENDOZA CARMONA, | Case No. 14-cv-05321-JSC |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| TIMOTHY AITKEN, et al., | |
| Respondents. | |

Petitioner Jose Horacio Mendoza Carmona ("Mr. Mendoza") filed this petition for writ of habeas corpus on December 3, 2014 challenging his indefinite detention in immigration custody at the Yuba County Jail. (Dkt. No. 1.) Having considered the parties' submissions and the relevant legal authority, the Court DENIES the habeas petition.

**BACKGROUND**

Mr. Mendoza is a citizen of Mexico who entered the United States as an immigrant in 1980 and obtained legal permanent residence in 1989. (Dkt. No. 1 at 5.) In 2004, Mr. Mendoza pled guilty to the felony of Receiving Stolen Property in violation of California Penal Code Section 496(a). (Dkt. No. 8 at 34 (Ex. D).) He was sentenced to 12 months in jail for the offense. (Dkt. No. 1 at 6.)

1    Mr. Mendoza's jail sentence was later suspended and he was placed on three years of court probation.
2    (Dkt. No. 8 at 34 (Ex. D).)
3            On August 2, 2013, the Department of Homeland Security ("DHS") issued a Notice to Appear
4    with the immigration court thereby commencing removal proceedings against Mr. Mendoza pursuant
5    to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") as an aggravated felon
6    based on his conviction for receiving stolen property.  (*Id*. at 18 (Ex. A).)  Mr. Mendoza was arrested
7    and detained at the Yuba County Jail upon issuance of the Notice to Appear.  (Dkt. No. 1 at 2-3.)  On
8    January 2, 2014, the Immigration Judge sustained the charge of removability finding Mr. Mendoza
9    removable as an aggravated felon and therefore ineligible for asylum, and denying his applications
10   for withholding of removal and relief under the Convention Against Torture.  (Dkt. No. 1 at 7; Dkt.
11   No. 8 at 40-41 (Ex. E).)  Two months later, the Board of Immigration Appeals ("BIA") dismissed Mr.
12   Mendoza's appeal, affirming the Immigration Judge's findings.  (Dkt. No. 8 at 38-39 (Ex. E).)
13           A petition for review of this removal order is currently before the Ninth Circuit Court of
14   Appeals.  (Dkt. No. 1 at 7.)  Although the Ninth Circuit initially stayed Mr. Mendoza's removal
15   pending a decision on his U visa application, the government has filed a motion to lift the stay
16   because the U visa was denied.  (Dkt. No. 1 at 7; Dkt. No. 9-1 (Ex. A).); *see also Mendoza v. Holder*,
17   No. 14-71026 (9th Cir.).  On September 29, 2014, Mr. Mendoza filed a request to maintain the stay to
18   allow him to file a second U visa application.  (Dkt. No. 1 at 7.)  The government's motion to lift the
19   stay is still pending before the Ninth Circuit.  (*Id*.)
20           Meanwhile, on February 4, 2014—nearly six months after his detention pursuant to the Notice
21   to Appear—Mr. Mendoza filed a request for a bond redetermination hearing regarding his prolonged
22   detention pursuant to *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) and *Diouf v. Napolitano*,
23   637 F.3d 1081 (9th Cir. 2011).  (Dkt. No. 8 at 43-48 (Ex. F).)  On February 28, 2014, the Immigration
24   Court denied Mr. Mendoza's request for a change in custody status and reserved his opportunity to
25   appeal by March 31, 2014.  (*Id*. at 47 (Ex. G).)  Mr. Mendoza did not appeal the Immigration Judge's
26   denial of bond, (*id*. at 13), and he currently remains detained at the Yuba County Jail in Marysville,
27   California.  (Dkt. No. 1 at 7.)
28

On December 3, 2014, Mr. Mendoza filed the underlying petition for writ of habeas corpus in this Court, alleging that Respondents are unlawfully and unconstitutionally detaining him in violation of 8 U.S.C. § 1226(c). (Dkt. No. 1 at 8.) Mr. Mendoza asks the Court to assume jurisdiction over the matter, grant him a writ of habeas corpus directing Respondents to immediately release him, or in the alternative, order Respondents to grant an individualized hearing to justify the continued detention. (*Id*. at 11.)

The government concedes that Mr. Mendoza is detained pursuant to Section 1226(a); however, it argues that Mr. Mendoza has already received a bond hearing based on his claim of prolonged detention. (Dkt. No. 8 at 12.) The government contends that by failing to appeal the Immigration Judge's February 2014 denial of bond and failing to request an administrative bond redetermination, Mr. Mendoza's claims should be rejected for failure to exhaust administrative remedies. (*Id*. at 14-15.)

**LAW AND ANALYSIS**

The Court must resolve several issues in the present case. First, the Court must address the threshold question of whether Mr. Mendoza has named a proper respondent in his habeas petition. Second, the Court must consider the parties' competing interpretations of Sections 1226(a) and 1226(c) and determine what part of the statute applies to Mr. Mendoza. Depending on the resolution of that question, the Court must determine whether Mr. Mendoza is entitled to a bond hearing.

**I.    PERSONAL JURISDICTION**

   **A.    Immediate Custodian Rule**

      **1.    Introduction**

Mr. Mendoza brings his petition pursuant to 28 U.S.C. § 2241, which extends habeas relief to persons, "in custody under or by color of the authority of the United States." 28 U.S.C. § 2241(c)(1). The parties do not dispute that Mr. Mendoza satisfies the "in custody" requirements of the habeas statute or that the Court has subject matter jurisdiction pursuant to this statute. The government nonetheless seeks to dismiss the habeas petition contending that the Court lacks personal jurisdiction over the only properly named respondent. Mr. Mendoza names six respondents in his petition: Director of the San Francisco Office of Detention and Removal, US Immigration and

Customs Enforcement ("ICE"), Captain and Jail Division Commander at Yuba County's Sheriff's Department, Secretary of DHS, Acting Director of ICE, Director of the Executive Office of Immigration Review ("EOIR"), and the Attorney General.  (Dkt. No. 1 at 1.)  The government argues that in a "core" habeas petition challenging physical confinement, the only proper respondent is the warden of the facility housing the prisoner.  Citing the "immediate custodian rule" in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the government contends that the Captain and Jail Division Commander at Yuba County's Sheriff Department is the only proper respondent as Mr. Mendoza's immediate custodian and is located within the Eastern District of California.  Attempting to distinguish *Padilla*, Petitioner maintains that the Attorney General is a proper respondent as the legal custodian of noncitizen detainees.

Resolving this dispute requires answering two separate questions.  First, the Court must determine if the immediate custodian rule applies to Mr. Mendoza's petition.  Second, if the rule does not apply, the Court must determine which party constitutes a proper respondent.  Because the Court concludes that the immediate custodian rule does not apply to the type of challenge that Mr. Mendoza's petition presents, at least two of the presently named respondents—the Attorney General and DHS Secretary—are proper respondents.

### 2. *Padilla* Exception for Immigration Detention

In *Padilla*, the Supreme Court examined at length the custodian rule as it applied to an "enemy combatant" seeking to file a habeas petition under 28 U.S.C. § 2241.  542 U.S. at 435.  Mr. Padilla, a United States citizen, detained in federal criminal custody at a US Navy brig, filed a habeas petition under Section 2241, naming the President, Secretary, and brig's commander as respondents.  *Id*. at 426.  The Court applied the immediate custodian rule to core proceedings—or challenges to physical custody—and ultimately held that the only proper respondent in such a proceeding is the person with the ability to produce the prisoner's body.  *Id*.; *see also Wales v. Whitney*, 114 U.S. 428, 574 (1885) (habeas petitions contemplate a proceeding against an individual who has immediate custody of the party detained, with the ability to produce the body before the court); 28 U.S.C. § 2242.  As a result, the brig commander, located in a district other than the one in which Padilla filed, remained the only proper respondent such that the court lacked personal jurisdiction to hear the merits

4

of the claim. *Padilla*, 542 U.S. at 445. The Court maintained, however, that when a habeas petitioner "challenges something other than his present physical confinement" the immediate custodian rule does not apply. *Id*. at 438. The Supreme Court expressly withheld judgment on whether the Attorney General is a proper respondent in a habeas petition filed by a noncitizen detained pending deportation. *Id*. 435 n.8. In so doing, the Supreme Court declined to resolve the split among the lower courts regarding whether the immediate custodian rule applies in the immigration detention context. *Id*.

### 3. Relevant Lower Court Decisions

Before *Padilla*, the Ninth Circuit Court of Appeals in *Armentero v. INS* (*Armentero I*) considered who a proper respondent in such a case would be. *Armentero I*, 340 F.3d 1058 (9th Cir. 2003), *vacated on unrelated grounds by Armentero v. INS*, 412 F.3d 1088, 1093 (9th Cir. 2005) (*Armentero II*). The facts in *Armentero I* were similar to those here—the petitioner challenged his detention on constitutional grounds, but named the Immigration and Naturalization Service ("INS") as the only respondent. 640 F.3d at 1060. The Ninth Circuit concluded that while, generally, the proper respondent in a habeas petition is the petitioner's immediate custodian, the statutory custodian requirement of 28 U.S.C. § 2241 "is sufficiently flexible to permit the naming of respondents who are not immediate physical custodians if practicality, efficiency, and the interests of justice so demand." *Id*. at 1068. Although immigration detainees may be held in state and local institutions, these local and state authorities do not have the power to release detainees unless federal authorities so command. *Id*. at 1069. Finding that it made little sense for an immigration detainee to direct a petition to a local or state warden lacking any legal power over the detainee, the Ninth Circuit concluded that the immediate custodian rule did not apply. *Id*. The court relied on statutes and regulations vesting the Attorney General and Secretary of DHS with authority over noncitizen detention to demonstrate that both officials were the proper respondents. *Id*. at 1071, 1073.

After the Supreme Court's decision in *Padilla*, the *Armentero I* panel granted a petition to rehear the case. *Armentero II*, 412 F.3d at 1093. However, by the time *Armentero I* was filed, the petitioner had fled from the facility where he had been detained and in light of this development, a two-judge majority on the *Armentero I* panel vacated the original decision in accordance with the

"fugitive disentitlement" doctrine. *Id*. at 1088, 1091. In dissent, Judge Berzon disagreed with the majority's application of the fugitive disentitlement doctrine and maintained that the immediate custodian rule need not apply in the case of a noncitizen detainee's petition for habeas corpus. *Id*. at 1094.

The Ninth Circuit has not considered this issue since *Armentero*. There is thus no binding precedent to direct the Court's analysis. The Seventh Circuit Court of Appeals is the only circuit to address this issue since *Padilla,* and it concluded that the Attorney General is not a proper respondent to a noncitizen's petition. *Kholyavskiy v. Achim*, 443 F.3d 946 (7th Cir. 2006).[1] While the lower courts remain divided on this issue, many have applied the immediate custodian rule to find the warden of the facility housing the detainee the only proper respondent. *See, e.g.*, *Nken v. Napolitano*, 607 F. Supp. 2d 149, 154 (D.D.C. 2009) (applied the immediate custodian rule to detainee's habeas petition finding that DHS Secretary was not a proper respondent); *Zhen Yi Guo v. Napolitano*, No. 09 Civ. 3023(PGG), 2009 WL 2840400, at *2 (S.D.N.Y. Sep. 2, 2009) (application of immediate custodian rule "indicates that the proper respondent . . . is the person who had the power to produce [petitioner] when he filed his petition—i.e., the warden"); *Yoder v. Frederking*, No. 04-CV-905-DRH, 2005 WL 2428699, at *2 (S.D. Ill. Sep. 30, 2005) (petitioner failed to name a proper respondent naming the Illinois Attorney General, but not the warden of the facility in which he was detained). This Court does not find the reasoning in these cases persuasive because, in determining the proper respondent, they fail to consider the correlation between the substantive relief an immigrant detainee seeks and the person with the requisite authority to provide such relief. Instead, the Court favors the approach taken by the United States District Court for the District of Colorado in *Sanchez-Penunuri v. Longshore*, 7 F. Supp. 3d 1136 (D. Colo. 2013).

---

[1] Decisions from the First, Third, and Sixth Circuits applying the immediate custodian rule in the context of a noncitizen petition predate *Padilla*. *See Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003); *Vasquez v. Reno*, 233 F.3d 688 (1st Cir. 2000); *Yi v. Maugans*, 24 F.3d 500 (1994). The Second Circuit discussed the issue in detail, but reserved judgment in *Henderson v. INS*, 157 F.3d 106 (2d. Cir. 1998). Also predating *Padilla*, the Northern District of California applied the holding in *Vasquez* finding the district director of the district of confinement the proper respondent in a habeas petition brought by a noncitizen in custody. *Santiago v. INS*, 137 F. Supp. 2d 1102 (N.D. Cal. 2000.)

In *Sanchez-Penunuri*, a noncitizen detainee similarly sought a writ of habeas corpus requesting access to a bond hearing that an immigration judge had previously denied. *Id*. at 1138. The petitioner pled guilty to two felony violations and was sentenced accordingly. *Id*. Several years after completing his sentence, the petitioner was arrested and detained. *Id*. Pursuant to 8 U.S.C. § 1226(a), the petitioner requested a bond hearing which an immigration judge denied, reasoning that the petitioner was subject to mandatory detention pursuant to Section 1226(c). *Id*. The habeas petitioner challenged the statutory and constitutional validity of the immigration judge's decision. *Id*. The District of Colorado had to determine whether the petitioner named a proper respondent, apply the appropriate statutory interpretation, and analyze the implications of the statutory analysis on the petitioner's access to a bond hearing. *Id*. at 1139.

The court distinguished habeas petitions in the immigration context as a request for discretionary relief or an opportunity for the government to exercise its discretion in consideration of a removal decision rather than a request for immediate release. *Id*. at 1147. The court found the immediate custodian rule inapplicable in this context because, "[a] jailer has never been recognized as possessing the authority to consider granting an immigrant some sort of discretionary relief, and no such authority has ever been created through regulation." *Sanchez-Penunuri*, 7 F. Supp. 3d at 1148. Rather than the immediate custodian, the court concluded that the head of the federal agency with the authority to interpret immigration laws—the Attorney General—has the authority to grant an immigrant discretionary relief. *Id*. at 1148.

Although much of the court's analysis in *Sanchez-Penunri* is persuasive, the Court declines to predicate its decision here on the Attorney General's ability to afford discretionary relief in light of the jurisdiction stripping provisions of the REAL ID Act. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review ... any ... decision or action of the Attorney General or the Secretary of Homeland Security for the authority which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title."); 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or

7

release of any alien or the grant, revocation, or denial of bond or parole."). While district courts in the Ninth Circuit retain habeas jurisdiction to review claims of constitutional and legal error notwithstanding sections 1252(a)(2)(B)(ii) and 1226(e)), *see Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), using the Attorney General's ability to afford discretionary relief as the basis for its personal jurisdiction decision gives the Court here pause.[2] It is also unnecessary given the statute's plain language which gives both the Attorney General and the DHS Secretary legal authority over the release of immigrant detainees. As Judge Berzon noted in her *Armentero II* dissent, the immediate custodian rule is impractical in the immigration context; instead, the proper respondent in such a case should be an official with the actual authority to effectuate the prisoner's release. *See Armentero v. INS*, 412 F.3d 1088, (9th Cir. 2005) (Berzon, J., dissenting). The Court thus concludes that the proper respondents are at least the DHS Secretary and Attorney General because of their far-reaching authority to administer detention and removal proceedings of noncitizens.

### B.    Proper Respondents

While the majority of lower courts faced with this question have found the warden of the facility housing the detainee the only proper respondent, others have approved the Attorney General, DHS Secretary, and/or ICE District Director. *See, e.g.*, *Sanchez-Penunuri*, 7 F. Supp. 3d at 1148 (finding either Attorney General or DHS Secretary proper respondent); *Khodr v. Adduci*, 697 F. Supp. 2d 774, 776 (E.D. Mich. 2010) (finding ICE District Director a proper respondent); *Somir v. United States*, 354 F. Supp. 2d 215, 217-18 (E.D.N.Y. 2005) (concluding that the near complete control the Attorney General possesses over noncitizens facing deportation makes him the legal custodian of these individuals and therefore a proper respondent).

The Homeland Security Act of 2002 reassigned many issues related to immigration detention from the INS to DHS. 6 U.S.C. § 557; *see also Sanchez-Penunuri*, 7 F. Supp. 3d at 1150. The Act vests the DHS Secretary with the authority to carry out immigration enforcement functions "vested by statute, in, or performed by, the Commissioner of Immigration and Naturalization (or any officer,

---

[2] Further, the REAL ID Act does not alter a district court's jurisdiction to hear cases regarding indefinite detention. *See Nadarajah v. Gonzales*, 443 F.3d 1089, 1075-6 (9th Cir. 2006) ("[T]he jurisdiction-striping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal . . . in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court.")

employee, or component of the Immigration and Naturalization Service)" and among these duties is the authority to administer the detention and removal program. 6 U.S.C. §§ 202(3), 251(2); *see also Armentero I*, 340 F.3d at 1072.  The DHS Secretary possesses statutory authority to affect the detention and removal of noncitizen detainees, and thus, possesses legal authority over Mr. Mendoza.

The Attorney General arguably possesses more authority than the DHS Secretary over noncitizens facing exclusion and deportation proceedings.  Congress has designated the Attorney General the legal custodian of noncitizens deportable as a result of criminal convictions.  *See, e.g.*, 8 U.S.C. §1226(c)(1) ("The Attorney General shall take into custody . . .").  Congress has also established the Attorney General as proper respondent in a noncitizen's petition for review challenging orders of deportation.  8 U.S.C. § 1252(b)(3)(A) ("The respondent is the Attorney General.").  Further, under the relevant provision of the INA, Congress has vested the Attorney General with the authority to remove convicted noncitizens.  8 U.S.C. § 1227(a) ("Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the classes of deportable aliens.").  Pursuant to this statutory power, the Attorney General possesses complete authority to detain noncitizens, order them deported, and grant or deny them discretionary relief.  *Henderson*, 157 F.3d 106 at 125-26 (internal citations and quotation marks omitted); *see also Somir v. US*, 354 F. Supp. 2d 215 at 217-28 ("[T]he near total control exercised by the Attorney General over aliens facing exclusion and deportation proceedings makes the Attorney General a custodian of these individuals within the meaning of the general habeas statute.").  The overwhelming authority the Attorney General possesses to exercise discretion in matters related to noncitizen deportation indicates that he is a proper respondent.

Having found that both the Attorney General and the DHS Secretary, who are both named here, are proper respondents, it is unnecessary to consider whether the remaining respondents are likewise proper.  Because the Court concludes that the immediate custodian rule does not apply in this case and that at least one of the named respondents can provide Mr. Mendoza with the requested discretionary relief, the government's motion to dismiss the petition for lack of personal jurisdiction is denied and the Court turns to the merits of the petition.

## II. PROLONGED DETENTION

### A. Mandatory Detention Provision of §1226(c)

"The government may not detain a legal permanent resident for a prolonged period without providing him a neutral forum in which to contest the necessity of his continued detention." *Casas-Castrillon v. DHS*, 535 F.3d 942, 949 (9th Cir. 2008). During these hearings, the government must prove by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community justifying ongoing detention. *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). The Ninth Circuit has clarified that a noncitizens' detention becomes prolonged after six months. *Diouf*, 634 F.3d at 1091. "When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decision maker is substantial." *Id.* at 1091-92. The immigration judge may still find the detention justifiable, but a hearing provides the detainee with a necessary constitutional safeguard. *Id.* at 1084, 1092. The holding in *Diouf* applied to detentions pursuant to 8 U.S.C. Section 1231(a)(6), but the Ninth Circuit later extended the holding to detainees subject to prolonged detention pursuant to Section 1226. *Rodriguez*, 715 F.3d at 1138-40. The parties agree that Mr. Mendoza has already received a bond hearing pursuant to *Rodriguez*, but dispute the nature of Mr. Mendoza's ongoing detention.[3]

The government contends that Mr. Mendoza is being held pursuant to Section 1226(a) and that he has already received a bond hearing at which the government met its burden in justifying his detention. Mr. Mendoza counters that he is being held pursuant to Section 1226(c), which does not authorize prolonged indefinite detention, and he contends that notwithstanding his prior bond hearing, a year has passed since that hearing and his prolonged continued detention is unconstitutional. Because the parties disagree as to which section of the relevant statute applies to Mr. Mendoza's case, the Court must resolve this threshold issue first.

Both parties agree that Mr. Mendoza is charged with removability based on his conviction as an aggravated felon. (*See* Dkt. No. 8 at 18 (Ex. A) (Notice to Appear charging Mr. Mendoza with

---

[3] This case appears procedurally atypical because Mr. Mendoza had his *Rodriguez* hearing before his removal order became final (Dkt. No. 8 at 12); however, he has not argued that it was ineffective as a *Rodriguez* hearing due to its timing. (Dkt. No. 9 at 4.)

10

violating the Section 237(a)(2)(A)(iii) of the INA.) Under Section 1226(c)(1)(B), the Attorney General "*shall* take into custody any alien . . . who is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)." 18 U.S.C. § 1226 (emphasis added). However, under *Rodriguez*, once a noncitizen's detainment under Section 1226(c) becomes prolonged—meaning that the detention has lasted for six months—the individual is entitled to a bond hearing. 715 F.3d at 1138. In other words, the mandatory detention of Section 1226(c) is subject to a six-month limitation, after which the Attorney General's detention authority shifts to Section 1226(a)—which entitles detainees to an individualized bond hearing. *Id*. at 1138. Thus, while Mr. Mendoza was initially held under Section 1226(c), having been detained for over a year, the authority to detain him now lies under Section 1226(a).

### B. Indefinite Detention

Mr. Mendoza concedes that he has already had a *Rodriguez* bond determination hearing, but contends that his circumstances suggest that his detention will likely continue indefinitely and he therefore requests another hearing to determine the propriety of his ongoing detention. The government opposes the request for a hearing both on the merits and as a procedural matter. First, the government argues that Mr. Mendoza's detention is constitutionally permissible. The government next argues that Mr. Mendoza has failed to exhaust his administrative remedies because the regulations provide for an internal process whereby Mr. Mendoza could seek a bond redetermination hearing under 8 C.F.R. § 1003.19(e), but has not done so, and he also failed to appeal the initial denial of his bond request.

Mr. Mendoza counters that a requirement to exhaust administrative review would have been an exercise in futility. First, DHS would have likely rejected his appeal for untimeliness, and second, because DHS had already decided that he was ineligible for bond, DHS would have maintained this position on appeal. Because the Court concludes that Mr. Mendoza has already had his required bond determination hearing, he is not facing an indefinite detention, and he has failed to exhaust his administrative remedies, he is not entitled to another bond redetermination hearing.

### 1. Reasonably Foreseeable Removability

In *Prieto-Romero v. Clark*, the court concluded that even after a petitioner receives a bond hearing, Section 1226(a) does not authorize indefinite detention, rather "the Attorney General's detention authority under § 1226(a) [is] limited to the period reasonably necessary to bring about an alien's removal from the United States." 534 F.3d 1053, 1063 (9th Cir. 2008). The court nonetheless held that although the petitioner's three-year long detention qualified as prolonged, it did not qualify as indefinite. *Id*. at 1062. The court distinguished *Zadvydas v. Davis*, 533 U.S. 679 (2001), in which the Supreme Court concluded that a noncitizen detainee was entitled to release if he demonstrated "no significant likelihood of removal in the reasonably foreseeable future." *Prieto-Romero*, 534 F.3d at 1062 (internal citations and quotation marks omitted). The court emphasized that the *Zadvydas* petitioners could not be removed because although they had exhausted all judicial and administrative appeals processes and had been ordered removable, their designated countries either refused to accept them or lacked a repatriation treaty with the United States, placing them in a "removable-but-unremovable limbo." *Id*. at 1062 (internal citations and quotation marks omitted). In *Prieto-Romero*, in contrast, the government could successfully deport the petitioner to Mexico in the event of unsuccessful judicial review; thus, the petitioner faced a "significant likelihood of removal in the reasonably foreseeable future." *Id* at 1062. The court concluded that, despite the judicial review process causing delays in removal, and notwithstanding the absence of a definite end date in his detention, these factors alone did not make his detention indefinite. *Id*. at 1063.

Here, although Mr. Mendoza's 16-month long detention is similarly prolonged, it does not qualify as indefinite. His arguments to the contrary are unpersuasive. He contends that he plans to pursue additional appeals which will further delay his deportation, and he emphasizes the government's lack of any efforts to deport him in the last year; rather, it has taken its time litigating his case. (Dkt. No. 9 at 4.) However, under *Prieto-Romero*, neither the ongoing delays resulting from the review process nor the lack of a definite end date in his detention render Mr. Mendoza's detention indefinite. 534 F.3d at 1063. Further, unlike the *Zadvydas* petitioners, there is no evidence that Mr. Mendoza is unremovable because his home country of Mexico will not accept him; rather, the government is ultimately capable of deporting him to Mexico at any time and has demonstrated

its interest in doing so by filing a motion to lift the stay. There is no reason to believe that Mr. Mendoza will not be promptly removed as soon as the Ninth Circuit's judicial review process concludes. Thus, while his continued detention is prolonged, it is not indefinite; instead, his removal is reasonably foreseeable.

Mr. Mendoza's detention is therefore consistent with *Zadvydas*, *Prieto-Romero*, and Section 1226(a). *See also Almousa v. Gonzalez*, No. 1:07-cv-00135-OWW-SMS (HC), 2008 WL 4657809 (E.D. Cal. Oct. 21, 2008) (finding petitioner's three-year long detention prolonged but nonetheless authorized under Section 1226(a) because his removal was reasonably foreseeable).

### 2. Exhaustion

Mr. Mendoza's failure to appeal the immigration judge's bond determination to the BIA before requesting habeas review poses a further obstacle to his request for relief, as does his apparent failure to request a bond redetermination pursuant to 8 C.F.R. § 1003.19. Mr. Mendoza unpersuasively argues that exhausting administrative remedies would have been an exercise in futility and asks the Court to exempt him from the requirement.

The INA contains an administrative exhaustion requirement which applies to petitioners on direct review and to habeas petitioners. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *see also* 8 U.S.C. § 1252(d)(1). In addition to statutorily mandated exhaustion requirements, courts may also prudentially require habeas petitioners to exhaust administrative remedies. *Id*.

> Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id*. (internal citations and quotation marks omitted). Courts also have discretion to waive exhaustion requirements when administrative remedies are inadequate or ineffective, the administrative process would be void, or the pursuit of administrative remedies would be futile or result in irreparable injury. *Laing v. Ashcroft*, 370 F.3d 994, 999 (9th Cir. 2004) (internal citations and quotation marks omitted). However, in *Leonardo v. Crawford*, the Ninth Circuit found it inappropriate for a petitioner to pursue habeas review of an immigration judge's adverse bond determination before appealing to the BIA.

13

646 F.3d 1157, 1160 (9th Cir. 2011).  The court labeled this an "improper shortcut" and held that the petitioner "should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." *Id*.

The *Puga* factors suggest that the Court should require exhaustion here.  First, DHS regulations clarify that, after an initial bond hearing, a detainee's request for a subsequent bond hearing "*shall* be made in writing and *shall* be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."  *See* 8 C.F.R. § 1003.19(e) (emphasis added).  This regulation demonstrates a clearly-established administrative scheme designed to address custodial determinations, a practice that includes an appeals process.  *Resendiz v. Holder*, No.12-04850, 2012 WL 5451162, *at 4 (N.D. Cal. Nov. 7, 2012); *see also Puga*, 488 F.3d at 815.  Second, instead of filing a timely appeal, Mr. Mendoza filed his habeas petition about nine months later.  "To allow petitioners to circumvent the appeals procedure and petition the district court for the same relief that could have been sought before the BIA would encourage the deliberate bypass of the administrative scheme." *Resendiz*, 2012 WL 5451162, at *4.  Mr. Mendoza had the opportunity to first appeal the immigration judge's decision before asking this Court to order the government to provide him with another hearing.  Lastly, assuming the immigration judge erred in finding that he lacked jurisdiction (an issue not before the Court today), the agency should have the first opportunity to correct any mistakes, a conclusion which promotes administrative autonomy and judicial efficiency.  *Id*.; *see also Puga*, 488 F.3d at 815.

Additionally, Mr. Mendoza fails to establish any valid exception to the exhaustion requirement.  Mr. Mendoza does not to provide any authority to support his request that the court waive the exhaustion requirement other than to suggest that his appeal likely would have been rejected as untimely.  The basis for Mr. Mendoza's assertion is unclear.  He incorrectly states that he was given until March 3, 2014 to appeal; but the judge actually gave him until March 31, 2014.  (*Compare* Dkt. No. 9 at 5 *with* Dkt. No. 8 at 47 (Ex. G).)  Mr. Mendoza was served with the immigration judge's order on February 28, 2014, providing him with about one month to file his appeal.  (*Id*.)  Lastly, Mr. Mendoza fails to substantiate his claim that any appeal would likely have been denied because DHS had already determined him ineligible for bond.  This argument also works

against Mr. Mendoza's request for another bond hearing, relief he simultaneously argues would change nothing. Ultimately, Mr. Mendoza should have exhausted his administrative remedies before asking for habeas review of the adverse bond determination.

The Court thus concludes that Mr. Mendoza's request for relief is substantively and procedurally barred. Mr. Mendoza has neither been detained indefinitely within the meaning of *Prieto-Romero* and Section 1226(a), nor has he properly exhausted the administrative remedies available to him.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: April 10, 2015

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE